597 A.2d 671

**Cindy L. BLOOM and Howard M. Bloom, Appellants,**

v.

**DUBOIS REGIONAL MEDICAL CENTER, Dr.
James K. Fugate, and Robert DiGilarmo.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1990.

Filed Sept. 27, 1991.

84

Rodney A. Beard, State College, for appellants.

James M. Horne, State College, for appellee Fugate.

Edward T.J. Graboski, Hollidaysburg, for appellee Dubois Regional.

Before DEL SOLE, BECK and HUDOCK, JJ.

BECK, Judge.

This is an appeal from an order granting preliminary objections and dismissing some but not all of a multi-count complaint. The substantive issues on appeal raise challenging questions regarding the sufficiency of plaintiffs-appellants' pleading. The first issue is whether appellants sufficiently pled *gross* negligence so as to fall within the exception to immunity provided to defendants-appellees by the Mental Health Procedures Act, Pa.Stat.Ann. tit. 50,

§ 7114(a) (Purdon Supp.1990). The second issue is whether a claim for negligent infliction of emotional distress is sufficiently pled where the plaintiff does not allege that he witnessed the negligence of the defendants, which consisted of a failure to act, but does allege that he witnessed the injurious results of defendants' negligence.

Prior to addressing these questions, however, we must first examine whether or to what extent the order appealed from is final and appealable. Since the order dismissed only part of the complaint and did not dispose of the entire case, it is not a classic final order. We must determine whether the order is nevertheless to be considered final and appealable.[1]

We begin with a presentation of the facts and somewhat confusing procedural history of this case. On October 24, 1986, plaintiff appellant Cindy Bloom was voluntarily admitted to the psychiatric unit of DuBois Regional Medical Center (the "Hospital"). The next evening, Mrs. Bloom's husband (co-appellant) came to visit his wife. He found her hanging by the neck from shoestrings behind a bathroom door adjacent to her hospital room in an evident suicide attempt. Fortunately, Mrs. Bloom's attempt failed. On October 21, 1988, she and her husband instituted suit against the appellees, who are the Hospital, Robert DiGilarmo, the manager of the Hospital's psychiatric unit, and Dr. James Fugate, a psychiatrist employed by the Hospital. Mr. and Mrs. Bloom sought to recover for injuries they allegedly sustained as a result of this incident.

The original complaint contained six counts. All were premised on the allegation that Mrs. Bloom had informed defendants of her mental disorder upon her admission and requested treatment. The complaint also alleged that defendants owed Mrs. Bloom a duty of care which they had breached. In the first count, Mrs. Bloom alleged that Dr. Fugate had been reckless, wanton, negligent and careless in

1. We raise this question *sua sponte* since it implicates our jurisdiction over this appeal. *See Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180 (1990) (*en banc*).

his examination and treatment of Mrs. Bloom by failing adequately to test, diagnose and supervise her. In the second count, Mrs. Bloom made substantially the same allegations against the Hospital, and also alleged that the Hospital had failed properly to train and supervise its staff. In the third count, Mrs. Bloom asserted that Mr. DiGilarmo had failed to provide adequate supervision, procedures and staffing at the Hospital. In counts four and five, Mr. Bloom alone was the plaintiff. He sought recovery of damages for the emotional distress he suffered as a result of witnessing his wife hanging by the neck and for medical expenses and time he expended for treatment of his wife as a result of the incident. In count six, both plaintiffs joined in a claim for Mr. Bloom's loss of consortium.

All three defendants filed answers with new matter in which they asserted the immunity provided to them by Section 7114(a) of the Mental Health Procedures Act, Pa. Stat.Ann. tit. 50, § 7114(a) (Purdon Supp.1990). Section 7114(a) provides:

> In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

*Id.*[2]

The defendants' assertion of immunity rested on the alleged failure of plaintiffs to plead either the gross negli-

---

**2.** This section has been interpreted to apply equally to hospital and individual defendants and to treatment decisions of the type at issue in this case. *Farago v. Sacred Heart General Hospital,* 522 Pa. 410, 562 A.2d 300 (1989).

gence or willful misconduct required by Section 7114(a). All defendants also pleaded in new matter that appellant Mr. Bloom had failed to state a claim for negligent infliction of emotional distress. They alleged that Mr. Bloom's pleading of this tort was deficient in that he had failed to allege that he had witnessed the negligent act or event, i.e., the failure of the defendants adequately to care for Mrs. Bloom, but rather had only viewed the "aftermath" of that negligence.

Apparently in response to defendants' answers, plaintiffs sought leave of court to amend their complaint to add new allegations regarding the conduct of the defendants. The trial court granted permission to amend, but limited the extent of the amendments in the following memorandum:

> In the original complaint [appellants] have plead [sic] "reckless, wanton, negligent and careless" acts on behalf of Defendants and in the prepared amended complaint they wish to characterize said conduct as gross negligence. This Court is satisfied that they have properly plead "reckless, wanton, negligent and careless" acts and the issue will no doubt become whether this rises to gross negligence. If it does not, this Court is satisfied that Plaintiffs cannot now change their cause of action to include gross negligence. If the original complaint satisfactorily pleads gross negligence, then an amendment is unnecessary. This Court will, however, permit Plaintiffs to file an amended complaint, but will restrict the amended complaint to defining the negligence of the Defendants as "reckless, wanton, negligent and careless."

Thus, the trial court determined that if the original complaint did not sufficiently plead gross negligence, the complaint could not be supplemented to add the necessary allegations, presumably because the statute of limitations on appellants' negligence claims had already expired. Although the court cited no precedent in support of this decision, it appears in essence to be a finding that to add allegations of gross negligence to a complaint already containing allegations of simple negligence would constitute

the pleading of a new cause of action which is not permissible after the limitations period has passed. *See Junk v. East End Fire Department*, 262 Pa.Super. 473, 396 A.2d 1269 (1978).[3]

Appellants filed an amended complaint in which they supplemented the original allegations of wrongdoing by appellees. The amended complaint alleged that Dr. Fugate and the Hospital had a "special" duty of care toward Mrs. Bloom and that upon her admission she showed indications of "severe psychiatric and psychological disturbances, ... depression and paranoia" which created an "unreasonably high probability of self-destructive actions on her part." The amended complaint also alleged in several new paragraphs that the defendants all knew or had reason to know that their actions in dealing with Mrs. Bloom created an unreasonably high probability of self-destructive harm for Mrs. Bloom and that all defendants acted in conscious disregard of this substantial risk. Finally, the amended complaint contained additional specific allegations of wrongdoing by defendants, including, *inter alia*, that the defendants had failed to obtain adequate information concerning Mrs. Bloom's possibly suicidal condition on admission and had failed properly to medicate and clinically treat her.

All defendants immediately filed preliminary objections.[4] Dr. Fugate demurred to all counts in which he was a named defendant, i.e., counts I, IV, V and VI. He argued that to the extent the amended complaint continued to plead

---

**3.** We do not decide whether it would be permissible for plaintiffs to amend their complaint to plead gross negligence after the statute of limitations had passed since that is not the issue before us. Neither party has appealed the trial court's decision to allow a limited amendment. Rather, our entire focus is on whether the *original* complaint sufficiently pled gross negligence so as to avoid defendants' immunity defense.

**4.** Immunity from suit is an affirmative defense which must be pleaded in New Matter, not in preliminary objections. *See* Pa.R.C.P. 1030; *Kyle v. McNamara & Criste*, 506 Pa. 631, 487 A.2d 814 (1985). However, where the defense is raised by preliminary objections and this procedure is not objected to, the question of immunity from suit may be decided. *Freach v. Commonwealth*, 471 Pa. 558, 565 n. 6, 370 A.2d 1163, 1166 n. 6 (1977).

simple negligence, he was immune, and that to the extent it attempted to plead gross negligence, this was a new cause of action barred by the statute of limitations. He also sought dismissal of Mr. Bloom's emotional distress claim on the ground that it failed to plead that Mr. Bloom had witnessed the tortious act itself and that Mr. Bloom failed to plead that he had suffered physical injury as a result of his emotional distress. The Hospital and Mr. DiGilarmo both filed preliminary objections in the nature of a motion to strike. They sought to strike largely those portions of the complaint that had been added in the amendment, namely, those portions alleging conduct in conscious disregard of a substantial risk, on the ground that these averments could not be included in the amended complaint under the terms of the trial court's order permitting the amendment and were beyond the statute of limitations.

In the order appealed from, the trial court granted Dr. Fugate's demurrer and the Hospital and Mr. DiGilarmo's motion to strike, dismissed Counts I, IV, V and VI in their entirety, and struck the portions of Counts II and III (against the Hospital and DiGilarmo alone) that had been added by the amendment. The result of this order is that Dr. Fugate has been completely dismissed from the case as to all claims by both plaintiffs. Moreover, Mr. Bloom has suffered the dismissal of all of his individual claims (including his claims for emotional distress, consortium and medical expenses) against the Hospital and DiGilarmo. Mrs. Bloom, on the other hand, has suffered the dismissal of all of her claims against Dr. Fugate but of only a portion of her claims against the Hospital and Mr. DiGilarmo, namely, those that were added by the amended complaint. All the claims that she asserted against these defendants in the original complaint remain.

■ Against this backdrop, we analyze the appealability of the trial court's order. As to Mr. Bloom, the order on appeal disposed of the entire case. All counts in which Mr. Bloom was joined as a plaintiff have been dismissed and he

is out of court as to all defendants. Thus, the order is a classic final and appealable order as to Mr. Bloom.

As to Mrs. Bloom, the answer is not as clear. Mrs. Bloom has been put out of court as to all of her claims against Dr. Fugate. Since an order dismissing a defendant is clearly final and appealable, Mrs. Bloom has a present right to appeal this aspect of the order. *See Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180 (1990) (*en banc*) and cases cited therein. However, Mrs. Bloom is still *in* court as to her original claims against the Hospital and Mr. DiGilarmo. She is out of court only to the extent that she has alleged in the amended complaint that these defendants knew or should have known of a substantial risk of harm and acted in conscious disregard of that risk. Our inquiry is whether the dismissal of these claims was a final appealable order.

This inquiry unfortunately leads us back to that troubling line of cases beginning with *Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983) (*en banc*), in which we have struggled to define an analysis which will enable us to determine whether an order dismissing some but not all of a plaintiff's claims against a particular defendant should be considered final. *Praisner* itself determined that such an order is final only if it dismissed a separate cause of action. However, this basic premise has been somewhat modified in a very recent quartet of cases decided by an en banc panel of this court. *See Jenkins v. Hospital of the Medical College of Pennsylvania,* 401 Pa.Super. 604, 585 A.2d 1091 (1991); *Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180 (1990); *Trackers Raceway, Inc. v. Comstock Agency, Inc.,* 400 Pa.Super. 432, 583 A.2d 1193 (1990); *Garofolo v. Shah,* 400 Pa.Super. 456, 583 A.2d 1205 (1990).

The fullest exposition of the finality issue is contained in the *Motheral* opinion. There, the court opined that the pivotal consideration in determining finality is " ... whether the plaintiff aggrieved by it [the order] has, for purposes of the particular action, been put 'out of court' on all theories of recovery asserted against a given defendant

for a given loss." *Motheral*, 400 Pa.Super. at 412, 583 A.2d at 1184 (quoting *Sweener v. First Baptist Church*, 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987)). The *Motheral* court also reiterated the distinction *Praisner* had drawn between the dismissal of a separate cause of action, which is final, and the dismissal of an alternate theory of relief, which is not. *Id.* In the former situation, the plaintiff has been denied any opportunity to recover for a given loss or harm he has suffered, whereas in the latter the plaintiff has been denied only one legal theory in support of recovery for that loss. *Id.* Application of this standard to the dismissal of some of Mrs. Bloom's claims against the Hospital and Mr. DiGilarmo reveals that this portion of the order is not final and appealable. The order dismissed Mrs. Bloom's claims that these defendants acted in conscious disregard of a substantial risk of harm. The order also dismissed certain of the specific allegations of wrongdoing which had been added by the amended complaint. The allegations that were stricken included the failure of these defendants to diagnose Mrs. Bloom's mental problem, specifically insofar as she was allegedly suicidal, and the failure of these defendants to treat her in a clinically appropriate manner.

The refusal of the trial court to allow Mrs. Bloom to proceed on the theory that these defendants acted in conscious disregard of a substantial risk and on her more specific allegations of wrongdoing certainly did not put Mrs. Bloom out of court on all theories of recovery for a given loss. She is still most definitely in court on her original allegations of wrongdoing, all of which arise out of the same facts and allege the same general deficiencies in the manner in which defendants Hospital and DiGilarmo provided medical care to Mrs. Bloom. Moreover, she sought to recover for but one and the same loss in both the original complaint and the amended complaint and she is still in court on her attempt to recover for that loss. At the very most, one of her theories of recovery has been excised. This alone does not result in a final and appealable order

that has in any way ended the litigation or put Mrs. Bloom out of court as to these defendants.[5]

Thus, we conclude that our jurisdiction over this appeal is limited to a review of the following aspects of the trial court's order:

1. the dismissal of Dr. Fugate from all counts of the complaint; and

2. the dismissal of Mr. Bloom's claims, specifically including his claim for negligent infliction of emotional distress.

We begin with the dismissal of all counts pleaded against Dr. Fugate. The trial court's reasoning in support of dismissal of these claims was in three parts. First, the court found that the original complaint pleaded facts that could only give rise to a finding of simple negligence and did not give rise to a claim that Dr. Fugate was guilty of gross negligence. Second, the court found that appellants could not file an amended complaint that added allegations that *would* sufficiently plead gross negligence because the addition of such allegations would constitute the pleading of "a new theory of recovery" past the statute of limitations. Finally, the court found that Dr. Fugate was immune from suit for simple negligence under Section 7114(a) of the Mental Health Procedures Act, quoted above.

██ Since we disagree with the first conclusion reached by the trial court, we must reverse its dismissal of Dr.

5. We recognize that the trial court opinion in support of the order on appeal does state that the Hospital and Mr. DiGilarmo are immune from suit for ordinary negligence and that the original complaint against them alleged only ordinary negligence. We also recognize that when the trial court struck the allegations in the amended complaint which had been added by the amendment, thus restoring the complaint to its original state, it effectively left Mrs. Bloom only with allegations which the court found to be within the immunity provided to these defendants. Nevertheless, the order on appeal did *not* dismiss these claims on immunity grounds. We presume the court did not do so because the preliminary objections filed by these defendants, which the court was then deciding, did not request that the court dismiss the complaint on immunity grounds. Unlike Dr. Fugate, these defendants requested only that the amended portions of the complaint be struck and that is all the trial court gave them.

Fugate. Clearly, as the trial court found and as appellants concede, Section 7114(a) would render Dr. Fugate immune from a suit for simple negligence arising out of his treatment of Mrs. Bloom. *See* note 1, *supra*. However, this is not a case where the immunity issue can be determined as a matter of law from the face of the complaint. Even without consideration of the content or propriety of the amended complaint, we find that the original complaint, sufficiently pleaded acts that could, upon further development of the facts and production of evidence, be found by a jury to constitute gross negligence.[6]

 Resolution of this issue depends upon defining the difference between ordinary negligence and gross negligence. We must ascertain the difference between these two levels of culpability because without doing so we cannot possibly determine whether the facts in appellants' complaint succeeded in alleging the latter, presumably higher, level.[7]

The Mental Health Procedures Act itself provides no definition of the phrase "gross negligence," despite the fact that under Section 7114(a) the meaning of this phrase may well be determinative of whether a defendant is immune from suit. We have located no precedent expressly construing this phrase as used in the Act, nor have we found any other generally applicable statutory definition of the

6. Section 7114(a) also provides an exception to immunity where the defendants are guilty of "willful misconduct." This has been defined for immunity purposes as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was certain to follow, so that such desire can be implied." *King v. Breach,* 115 Pa.Commw. 355, 366–67, 540 A.2d 976, 981 (1988). In the instant case, appellants do not contend that appellees' conduct was willful. Thus, appellees are immune from suit unless their conduct was grossly negligent.

7. We note that the trial court made no attempt to define the difference between these concepts. Instead, the court seemed to focus on whether the original complaint had labelled appellees' conduct as merely negligent or as grossly negligent. We disagree with this form of analysis, since the adequacy of the complaint must be judged by examination of the facts pled, and not of the conclusions of law that accompany them.

phrase. There are only two cases even remotely instructive on this question.

The first case is *Freach v. Commonwealth*, 471 Pa. 558, 370 A.2d 1163 (1977). In *Freach*, wrongful death and survival actions were brought against the Commonwealth and several of its departments, agencies, officials and employees, including Farview State Hospital, its superintendent and several doctors employed there. The complaint alleged that these defendants released a Mr. Wright from Farview, where he had been committed pursuant to the Mental Health and Mental Retardation Act of 1966, Pa.Stat. Ann. tit. 50, § 4101 et seq. (Purdon 1969), despite his extensive violent criminal past. Mr. Wright subsequently murdered the two persons on whose behalf the wrongful death and survival actions were brought. The court held that these allegations sufficed to plead gross negligence under the Mental Health and Mental Retardation Act of 1966, which provides immunity for persons committing acts pursuant to that statute except where those acts constitute, *inter alia*, gross negligence or incompetence. The court did not directly opine on the meaning of the phrase gross negligence.

Similarly, in *Farago v. Sacred Heart General Hospital*, 552 Pa. 410, 562 A.2d 300 (1989), the court was confronted with an action in which a patient at the hospital alleged that she was raped by another patient as a result of the hospital's inadequate supervision and protection. The trial court had instructed the jury that no liability could attach unless they found that the defendants had committed gross negligence because the defendants were immune from liability under Section 7114(a) of the Mental Health Procedures Act for all treatment decisions except those involving gross negligence or willful misconduct. The jury returned a verdict for the defendants. On appeal, plaintiffs contended that the hospital itself was not a protected person under Section 7114(a) and that general treatment decisions were not protected by the immunity of Section 7114(a). Therefore, plaintiffs alleged that all they had to prove to estab-

lish liability was ordinary negligence. The Supreme Court disagreed and affirmed the trial court. The court did not specifically opine on the rectitude of the jury's conclusion that the pleaded acts of negligence did not rise to the level of gross negligence, as that issue was not before the court.

Since neither of the foregoing cases provide us with any real standards as to how to evaluate a complaint to determine if it must be dismissed for failing sufficiently to plead gross negligence, we turn to the common law for guidance on the meaning of the term gross negligence as used in the statute.

■ Attempts at distinguishing between negligence and gross negligence have resulted in distinctions that are vague and impractical. As the authors of perhaps the leading treatise on tort law point out:

> Although the idea of "degrees of negligence" has not been without its advocates, it has been condemned by most writers, and, ... rejected at common law by most courts, as a distinction "vague and impracticable in [its] nature, so unfounded in principle," that it adds only difficulty and confusion to the already nebulous and uncertain standards which must be given to the jury. The prevailing rule in most situations is that there are no "degrees" of care or negligence, as a matter of law; there are only different amounts of care, as a matter of fact. From this perspective, "gross" negligence is merely the same thing as ordinary negligence, "with the addition," ... "of a vituperative epithet."

Keeton, *Prosser and Keeton on Torts*, Ch. 5, § 34 at 210–11 (5th ed. 1984) (footnotes omitted).

Cases in Pennsylvania do not provide clear guidance. In *Henry v. First Federal Savings & Loan Assoc.*, 313 Pa.Super. 128, 459 A.2d 772 (1983), a panel of this court noted that gross negligence was simply a different degree of negligence and both were premised on the violation of a duty of care owed to the plaintiff. *Id.*, 313 Pa.Superior Ct. at 132, 459 A.2d at 774. In contrast, the Commonwealth

Court defines gross negligence as failure to perform a duty in reckless disregard of the consequences or with such want of care as to justify a conclusion of willfulness or wantonness. *Williams v. State Civil Service Comm.*, 9 Pa. Commw. 437, 443, 306 A.2d 419, 422 (1973), *aff'd on other grds.*, 457 Pa. 470, 327 A.2d 70 (1974). On the other hand, the Supreme Court has opined on gross negligence in the context of a recent bailment case as follows: " ... there are no degrees of negligence in Pennsylvania. There are and always have been differing standards of care, however, at least in bailment cases...." *Ferrick Excavating v. Senger Trucking Co.*, 506 Pa. 181, 191, 484 A.2d 744, 749 (1984).

Although there has not been universal agreement as to the meaning of the term gross negligence, it is clear that the term does not encompass wanton or reckless behavior. As the Supreme Court has explained:

> It must be understood, of course, that wanton misconduct is something different from negligence however gross,— different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.

*Kasanovich v. George*, 348 Pa. 199, 203, 34 A.2d 523, 525 (1943); *see also Krivijanski v. Union Railroad Co.*, 357 Pa.Super. 196, 515 A.2d 933 (1986).

■ Having reviewed the prior case law, we are still without clear guidance as to what the legislature might have intended by its use of the term "gross negligence" in the Mental Health Procedures Act. Nowhere is the phrase defined either in the Act itself or in the generally applicable definitions in our statutory law. It appears that the legislature intended to require that liability be premised on facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity, or indifference. We hold

that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.

Applying this definition of gross negligence to the original complaint filed by appellants, we conclude that the complaint can be construed to plead facts sufficient to give rise to a finding of gross negligence. The complaint alleged that the defendants, who held themselves out as competent to provide psychiatric treatment to one in the position of Mrs. Bloom, completely failed to diagnose her mental condition and treat her in a manner that would protect her from serious physical harm. It further averred that upon admission the defendants were informed of Mrs. Bloom's mental disorder and nevertheless failed to take adequate precautions to assure her safety. These allegations encompass the potential of showing conduct on the part of the defendants that might be considered grossly negligent. Based on the complaint, it is not certain whether the plaintiffs can develop evidence that will demonstrate that the defendants' failure was flagrant enough to be characterized as a gross deviation from the applicable standard of care.

 We further note that the determination of whether an act or failure to act constitutes negligence, of any degree, in view of all the evidence has always been particularly committed to determination by a jury. *Colloi v. Philadelphia Electric Co.*, 332 Pa.Super. 284, 481 A.2d 616 (1984); *East Texas Motor Freight v. Lloyd*, 335 Pa.Super. 464, 484 A.2d 797 (1984). It is an issue that may be removed from consideration by a jury and decided as a matter of law only where the case is entirely free from doubt and there is no possibility that a reasonable jury could find negligence. *Id.* In this case, the trial court not only prevented the issue of the proper characterization of the defendant's conduct from going to a jury, but foreclosed plaintiffs-appellants from moving past the pleading stage of

their case. This was error. Thus, the dismissal of Dr. Fugate on immunity grounds at this stage of the case must be reversed.[8]

We now proceed to the last issue requiring our review. Mr. Bloom's count of negligent infliction of emotional distress was dismissed. The dismissal was based on the ground that he failed to allege that he had witnessed the negligent *acts* by defendants. Rather he only alleged that he witnessed the aftermath of those acts, i.e., his wife hanging by the neck.[9] The trial court concluded that this failure rendered Mr. Bloom's pleading of this cause of action fatally defective.

The parameters of the tort of negligent infliction of emotional distress have been difficult to define and the tort has undergone an evolutionary development. A history of the tort illustrates the difficult and multitudinous conceptual and policy problems it poses.

In an attempt to engender consistency, the courts of this Commonwealth have drawn artificial lines at different times to demark where liability will attach and where it will not.

**8.** The trial court also completely dismissed Mr. Bloom's claims for time and money he expended on medical treatment of his wife, and his claim for lack of consortium, contained in counts five and six, which had been pleaded against *all* defendants. The court did not state why it dismissed these claims by Mr. Bloom completely, as to all defendants, while only striking certain portions of Mrs. Bloom's claims against the Hospital and Mr. DiGilarmo. Perhaps the court thought that its conclusion on the immunity of Dr. Fugate also effectively precluded liability against the remaining defendants, since they too would eventually be determined to be immune and the complaint against them dismissed in its entirety. In any event, given our conclusion that immunity cannot be determined as a matter of law at this stage, it was error for the trial court to dismiss Mr. Bloom's claims for medical expenses and loss of consortium and those counts should be reinstated on remand.

**9.** Appellees also argue that Mr. Bloom has failed to allege facts that are sufficient to plead *intentional* infliction of emotional distress. We do not read Mr. Bloom's complaint as even attempting to raise such a claim, nor does he argue on appeal that he has pled such a claim. Nowhere is there an allegation of intentional misconduct by appellees, nor is there the required pleading of outrageous behavior that is central to this tort as defined in Restatement (Second) Torts § 46. Thus, we do not reach this issue.

For example, until 1970 this Commonwealth continued to cling to the artificial requirement of physical impact, denying recovery for emotional distress unless the plaintiff had also been physically impacted as a result of the negligent act. *See Knaub v. Gotwalt,* 422 Pa. 267, 220 A.2d 646 (1966). In *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970), the impact rule was replaced by another line, commonly referred to as the zone of danger rule. Under this rule, plaintiff could not recover for emotional distress unless he or she was in jeopardy of physical impact from the negligent act and actually feared that such impact would result. *Id.* However, this rule also soon proved to be an unjustifiable means of limiting the potentially limitless liability that could be imposed for emotional distress suffered by persons other than those who are directly physically impacted as a result of a negligent act.

Recognizing the untenable nature of the zone of danger rule, in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), the Supreme Court further expanded the group of persons who may recover for negligent infliction to include certain "bystanders" who are neither physically impacted nor within the zone of danger. The court enunciated the test of liability that presently governs in a negligent infliction of emotional distress action, holding that such a cause of action must be judged by the following criteria:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence;

(3) Whether plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Id.,* 486 Pa. at 170–71, 404 A.2d at 685 (quoting *Dillon v. Legg,* 68 Cal.2d 728, 740–41, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968)).

The *Sinn* test requires that we distinguish between those cases where liability should be allowed and those where it should not by focusing in part on whether the emotional distress results from the plaintiff's own contemporaneous observance as opposed to hearing about the event from someone else. This was clearly established in *Mazzagatti v. Everingham*, 512 Pa. 266, 516 A.2d 672 (1986). In *Mazzagatti*, the court rejected the claim of a mother whose daughter was fatally struck by an automobile. At the time of the accident, the mother was approximately one mile away from the scene, but when notified of the accident she immediately proceeded to the scene where she viewed her fatally injured daughter. The Supreme Court denied the mother recovery because it found that the driver of the automobile owed the mother no duty of care to protect her against the emotional distress she suffered when she viewed her injured daughter. *Id.*, 512 Pa. at 278–79, 516 A.2d at 678–9. The court reasoned as follows:

> ... when a plaintiff is a distance away from the scene of the accident and learns of the accident from others after its occurrence rather than from a contemporaneous observance, the sum total of policy considerations weigh against the conclusion that that particular plaintiff is legally entitled to protection from the harm suffered.
>
> . . . .
>
> We believe that where the close relative is not present at the scene of the accident, but instead learns of the accident from a third party, the close relative's prior knowledge of the injury to the victim serves as a buffer against the full impact of observing the accident scene. By contrast, the relative who contemporaneously observes the tortious conduct has no time span in which to brace his or her emotional system. ... Hence, the critical element for establishing such liability is the contemporaneous observance of the injury to the close relative.

*Id.*, 512 Pa. at 279, 516 A.2d at 679.

One might well question whether there is a sufficient "buffer" inherent in hearing from a third party that a

terrible injury has been inflicted on a loved one and in seeing the horrible results of an accident but not the accident itself to justify denial of recovery for emotional distress suffered as a result thereof. Is it in fact legitimate to say that the emotional distress suffered when a person hears of an injury to a relative and then immediately proceeds to the scene and sees the injured relative is so much less foreseeable or so much less intense that recovery should be denied? Although these questions have thus far been answered in the affirmative by our Supreme Court, and therefore are not presently open to debate, it would appear that the *Sinn/Mazzagatti* standard itself creates a somewhat artificial line between liability and non-liability.

 In applying the *Sinn/Mazzagatti* standard to this case, the precise question we must answer is—*what must the plaintiff have observed?* [10] As the above-quoted language from *Sinn* reveals, the *Sinn* court required that the plaintiff observe the "accident." *See also Brooks v. Decker*, 512 Pa. 365, 516 A.2d 1380 (1986). Panels of this court have variously phrased the observance requirement as requiring that the plaintiff have observed "the accident," "the negligent act," "the infliction of the negligent harm," "the negligent event," and the "traumatic event." *See, e.g., Neff v. Lasso*, 382 Pa.Super. 487, 555 A.2d 1304, *appeal denied*, 523 Pa. 636, 637, 565 A.2d 445 (1989); *Hackett v. United Airlines*, 364 Pa.Super. 612, 528 A.2d 971 (1987); *Halliday v. Beltz*, 356 Pa.Super. 375, 514 A.2d 906 (1986).

The array of terminology used in describing what the plaintiff must have observed has resulted from the myriad of fact situations which give rise to the cause of action. The lack of uniformity in expressing the precise nature of

**10.** In the thorough opinion authored by Judge Kelly in *Neff v. Lasso*, 382 Pa.Super. 487, 555 A.2d 1304 (1989), *allocatur denied*, 523 Pa. 636, 637, 565 A.2d 445 (1989), a similar attempt at refining the observation requirement was made. There, a panel of this court concluded that in a motor vehicle accident case *Sinn* did not require actual visual observation of the impact, but rather included cases where the relative visually observed events leading to the injury and then heard the actual impact causing the injury.

the observance requirement, i.e., exactly what must be observed, has resulted from the fact that in the above-referenced cases there was no need for further refinement of this requirement. In those cases, commonly involving an automobile accident, the negligent act and the infliction of injury were substantially simultaneous. There was no division in time or space between the negligent act and the harmful result or infliction of injury and, therefore, if one was observed, the other necessarily was also. The plaintiff either alleged that she had observed both the negligent act and the occurrence of the injury, or had observed neither, since all occurred within the same short time span and in the same place. The precise parameters of the observance requirement becomes important in the instant case only because, unlike the prior cases which dealt with an affirmative and traumatic negligent act by the defendant and simultaneous injury, the instant case involves a failure to act on the part of the defendants and the injury occurred some time after the negligent act and as a direct result of Mrs. Bloom's own intervening suicide attempt.

Because of these distinctions between this case and prior cases, the conclusion we reach in the instant case is not expressly dictated by existing precedent. Nevertheless, we find that the result that is most consistent with the Supreme Court's view of this tort is to deny relief to Mr. Bloom. The gravamen of the observance requirement is clearly that the plaintiff in a negligent infliction case must have observed the traumatic infliction of injury on his or her close relative at the hands of the defendant. The Supreme Court has drawn a line between cases involving observation of a traumatic event which has an immediate impact on the plaintiff and those not involving the observation of a traumatic event and where there is some separateness between the negligence of the defendant and its ultimate impact on the plaintiff. The court's intent has clearly been to limit recovery for negligent infliction of emotional distress to those situations where the plaintiff suffers a direct harm of his or her own as a result of the defendant's

conduct, and to find that this harm has been experienced only where the plaintiff has been directly and traumatically impacted by the defendant's tortious conduct. To recover the plaintiff must have observed the defendant traumatically inflicting the harm on the plaintiff's relative, with no buffer of time or space to soften the blow.

This court has consistently followed the Supreme Court in so limiting recovery for negligent infliction. We have, for example, denied recovery to a plaintiff who allegedly experienced emotional distress in watching the slow progression of a horrible disease suffered by a close relative allegedly because of acts by the defendants which the plaintiff did not contemporaneously observe and which caused no single identifiable traumatic event that the plaintiff could observe. *See Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984). Similarly, we denied recovery to plaintiffs who watched the suffering of a relative who had allegedly been injured by acts of medical malpractice which the plaintiffs did not contemporaneously observe. *Halliday v. Beltz, supra.* In each such case, we have found a lack of a traumatic impact on the plaintiff resulting directly and contemporaneously from the observation of the traumatic infliction of injury on the plaintiff's relative at the hands of the defendant.

In light of these considerations, we conclude that to allow recovery here would be to go beyond the parameters of liability that have been established both by the Supreme Court and this court. Mr. Bloom observed his wife in the aftermath of her own suicide attempt. He did not, however, observe any traumatic infliction of injury on his wife at the hands of the defendants because none occurred. The alleged negligence of defendants here is an omission and involved no direct and traumatic infliction of injury on Mrs. Bloom by defendants. Under these circumstances, we find that Mr. Bloom has not sufficiently pleaded a cause of action for negligent infliction of emotional distress since he has not pleaded the element of contemporaneous observance of traumatic infliction of injury by defendants.

We hasten to add, however, that we do not intend to fashion a rule that excludes recovery to all plaintiffs who allege negligent infliction based on their observance of a negligent *omission* by defendants. There are certainly circumstances where an omission might be construed as a traumatic infliction of injury on the plaintiff's relative and, if the plaintiff observed that occurrence, recovery could be had. Take, for example, the situation where a husband plaintiff seeks to admit his wife to an emergency room for medical care. Because of inaction by the emergency room personnel, the wife is left to languish in the outer office and expires there. Husband has viewed the entire event. The omission by the emergency room personnel in this scenario might create a sufficiently traumatic situation to be the basis for recovery for negligent infliction.

The order of the trial court is reversed in part and affirmed in part, consistent with this opinion. The counts of the complaint improperly dismissed are reinstated and the matter is remanded for further proceedings in accordance with this opinion. Jurisdiction is relinquished.

DEL SOLE, J., files a Concurring and Dissenting Opinion.

DEL SOLE, Judge, concurring and dissenting.

I concur in the majority's decision that Mrs. Bloom's claims against the Hospital and Mr. DiGilarmo are not final and appealable. I write separately, however, because I believe that it is time to reexamine the case law that leads us to this result.

While the majority has correctly stated the prevailing line of cases from *Praisner*, 313 Pa.Super. 332, 459 A.2d 1255, to *Motheral*, 400 Pa.Super. 408, 583 A.2d 1180, concluding that the dismissal of an alternative theory of relief does not take the plaintiff out of court and hence is not final and appealable, I am not satisfied with this result. Instead, I favor the theory that once a court's jurisdiction attaches for any purpose, it then attaches for all purposes. In the instant case, because the court has jurisdiction to hear Mr.

Bloom's claims and Mrs. Bloom's claims against Dr. Fugate, the court would therefore have jurisdiction to hear all of Mrs. Bloom's claims. This is analogous to the theory of pendent jurisdiction, on an appellate level. In the case of pendent jurisdiction, the plaintiff will have both federal and state claims against the defendant. Although the state claim may not independently be brought in federal court because of lack of diversity, the federal court has discretion to exercise pendent jurisdiction over the state claim if the two claims "derive from a common nucleus of operative fact" and are such that plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1968). Similarly, in the instant situation, the appellate court should have the discretion to hear all of Mrs. Bloom's related claims when it agrees to hear any of them.

Generally, the rationale for the principle that an order is not final and appealable until the appellant is effectively out of court is that piecemeal litigation should be avoided in order to use the court's resources most efficiently. *Gordon v. Gordon*, 293 Pa.Super. 491, 439 A.2d 683 (1981). However, this policy also underlies my proposed approach to the instant situation. Here, the appellate court has agreed to hear some aspects of the trial court's order. In order to avoid piecemeal litigation and act economically, the proper action would therefore be to hear all remaining aspects of the order at the same time. Because I find this to be the most sound judicial approach, I believe the time has come to reconsider this area of the law with an eye towards this change.

I respectfully dissent from that portion of the majority opinion which denies relief to Mr. Bloom for negligent infliction of emotional distress. The majority reaches its decision because Mr. Bloom never observed the negligent acts of defendants, despite the fact that he found his wife hanging by her neck in a suicide attempt. The negligent acts of defendants consisted of a failure to adequately test, diagnose and supervise Mrs. Bloom, and a failure to proper-

ly train and supervise the staff. If one were to follow the majority's reasoning, Mr. Bloom's mere presence when staffing and supervisory decisions were made would allow him to recover for negligent infliction of emotional distress, while viewing his wife hanging by a shoestring around her neck would not. This theory defies reason, for the observance of these seemingly neutral acts could not have inflicted the resultant harm. Such observance would not have added to the emotional distress suffered by Mr. Bloom. Only when Mr. Bloom encountered his wife's hanging body did he suffer the emotional distress for which he now seeks recovery and it is illogical to hold that observation of these negligent acts and omissions of defendants is the necessary element to a finding for Mr. Bloom. Because I believe that observation of defendant's negligent acts is irrelevant in this case to a determination of Mr. Bloom's claim for recovery of damages for emotional distress, I respectfully dissent.