## A.T.S. v. Boy Scouts of America

*Frank P. Murphy,* for plaintiffs.
*Joseph F. McNulty,* for defendant Boy Scouts of America.
*John A. Guernrey,* for American Red Cross.

DAVENPORT, *S.J.,* February 10, 1992—The plaintiffs, A.T.S. and his parents, T.S. and M.S., have appealed from two orders sustaining preliminary objections of defendants, Boy Scouts of America (BSOA) and the American Red Cross (ARC). The plaintiffs' complaint stems from the alleged sexual molestation of plaintiff A.T.S. by defendant Douglas Verney while A.T.S. was a member of the Boy Scouts and the American Red Cross, and while Verney was a volunteer in both organizations. Verney had been convicted of child molestation in Massachusetts prior to his joining the BSOA and ARC. Plaintiffs' nine count complaint names BSOA as a defendant in Counts IV, VI, VII, VIII and IX. The court's orders sustained the BSOA's objections to Counts VIII and IX, and dismissed their objections to Counts IV, VI and VII, and sustained all objections of ARC relating to each count in which it was named

as a defendant. Plaintiffs argue that the court erred in regard to each objection sustained.

## THE COUNTS

Count IV alleges that the BSOA was negligent in failing to safeguard the health and welfare of A.T.S. The alleged breach of care is based on the failure of BSOA to actively supervise its volunteers, and to administer a thorough criminal background check of each volunteer who they know will have supervisory contact with young children. Count V makes the identical claim against ARC.

Count VI claims that defendants BSOA and ARC are liable to the plaintiff A.T.S. for the actions of defendant Douglas Verney under the doctrine of respondeat superior. The complaint alleges that both BSOA and ARC knew or should have known of Verney's misconduct prior to and during his participation as a volunteer. Count VI is similar to Counts IV and V in that plaintiffs' claim that the defendants should have known of Verney's misconduct prior to his participation in this state with the defendants is obviously based on their contention that the defendants should have conducted a criminal background check. Plaintiffs' claim that they should have discovered Verney's alleged misconduct with plaintiff A.T.S. is obviously based on their contention that the defendants should have more closely supervised their volunteers.

Count VII claims that BSOA and ARC are liable to plaintiff A.T.S. for punitive damages. The complaint alleges that the organizations' employment or recruitment policies which fail to require a criminal background check on prospective volunteers are so outrageous as to subject the defendants to punitive damages.

Count VII claims that both BSOA and ARC are liable to the plaintiff parents, T.S. and M.S., for the intentional or negligent infliction of emotional distress, and Count IX claims that both defendants are liable to the parents for punitive damages.

## DISCUSSION

The court will first address the defendants' preliminary objections to Counts VIII and IX brought on behalf of plaintiff parents, T.S. and M.S. Count VIII alleges that defendants BSOA and ARC are liable to the parents for the intentional or negligent infliction of emotional distress for their failure to conduct criminal background checks, and more closely supervise their volunteers. The court properly sustained the defendants' objections.

The preliminary objections sustained by the court are in the nature of a demurrer. A preliminary objection in the nature of a demurrer is not to be sustained unless the law says with certainty that no recovery is possible. *Cianfranni v. Commonwealth State Employees Retirement Board,* 505 Pa. 294, 297, 479 A.2d 468, 469 (1984). Thus, as plaintiffs correctly assert in their memorandum, if any theory of law will support the plaintiffs' claim, a dismissal would be improper.

The theory of law supporting plaintiffs' claim, however, must be one that is recognized by the Pennsylvania courts. The plaintiffs have failed to point out one instance in which the courts of this Commonwealth have recognized the tort of intentional infliction of emotional distress. On the other hand, the defendants have provided numerous instances in which our courts have expressly held that no such tort exists. *Kazatsky v. King David Memorial Park Inc.,* 515 Pa. 183, 527 A.2d 988 (1987); *Daughen v. Fox,* 372 Pa. Super. 405, 409, 539 A.2d 858, 861 (1988) (citing *Kazatsky*) *alloc. de-*

*nied,* 520 Pa. 605, 553 A.2d 967 (1989); *Buczek v. First National Bank of Mifflintown,* 366 Pa. Super. 551, 531 A.2d 1122 (1987); *Ford v. Isdaner,* 374 Pa. Super. 40, 44, 542 A.2d 137, 139 (1988).

The plaintiffs note that the Pennsylvania Supreme Court in *Kazatsky* stated in dicta that it might recognize the tort of intentional infliction of emotional distress in situations where the conduct is "so outrageous and extreme as to go beyond all possible bounds of decency." *Kazatsky,* at 191, 527 A.2d at 991. This dicta along with the historical reluctance of Pennsylvania courts to recognize this tort, combine to place a great burden upon the plaintiffs in order to establish the intentional infliction of emotional distress. As mentioned earlier, this burden has never before been satisfied, and the lower court shares in the Supreme Court's apparent discomfort with this tort of intentional infliction absent the most extreme circumstances.

The plaintiffs' Count VIII also alleges that the defendants BSOA and ARC are liable to the parents for negligent infliction of emotional distress. In Pennsylvania, where a claim for negligent infliction of emotional distress is derived from physical injury to another, the plaintiff must have witnessed the negligent conduct which resulted in the injury to the third person. *Mazzagatti v. Everingham,* 512 Pa. 266, 516 A.2d 672 (1986); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). The plaintiff parents do not claim to have observed either the BSOA or ARC inflicting injury upon their son. Instead, plaintiffs claim that it was impossible for them to observe defendants behavior because the conduct complained of is actually a failure to act (i.e. failure to conduct criminal background check and supervise more closely), and that therefore they must be

excused from satisfying the criteria of contemporaneous observance.

The Superior Court, however, recently held that the claim for negligent infliction of emotional distress is not sufficiently pled where the plaintiffs do not allege that they observed the negligence of the defendants, which consisted of a failure to act, but merely alleges that they witnessed the injurious results of defendants negligence. See *Bloom v. DuBois Regional Medical Center,* 409 Pa. Super. 83, 597 A.2d 671 (1991). "The gravamen of the observance requirement is clearly that the plaintiff in a negligent infliction case must have observed the traumatic infliction of injury on his or her close relative at the hands of the defendant." *Bloom,* at 103, 597 A.2d at 682. Thus, where the negligence claimed involves an omission or failure to act, which are precisely the facts averred in plaintiffs' complaint, the claim for negligent infliction is not sufficiently pleaded.

The fact that plaintiffs claim to have had to endure their son's gradual withdrawal from themselves and his friends is of no consequence. No claim exists where the plaintiffs experience emotional distress through witnessing the slow progression of harm suffered by a close relative allegedly because of acts by defendants which the plaintiffs did not contemporaneously observe, and which caused no single identifiable traumatic event that the plaintiffs could observe. *Cathcart v. Keene Industrial Insulation,* 324 Pa. Super. 123, 471 A.2d 493 (1984). In the present matter, there is clearly no single identifiable traumatic event caused by defendants' negligence. More importantly, the Superior Court again chose to emphasize the failure of plaintiffs to observe the infliction of injury upon a loved one as a controlling factor.

Indeed, the Supreme Court has twice held that parents who do not observe the tortious act, but only the resulting injury may not recover. See *Mazzagatti, supra; Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981). The rationale for these decisions is sound and often utilized by our legal system. Rules such as requiring that the tortious event be observed provide the judicial system with a degree of certainty. Furthermore, they limit recovery for negligent infliction which has historically been the position of our courts. See *Mazzagatti; Bloom, supra.*

The plaintiff parents also sued both BSOA and ARC for punitive damages in Count IX of their complaint. However, because no cause of action exists in favor of plaintiff parents against BSOA or ARC, then plaintiff parents have no claim for punitive damages. *Kirkbridge v. Lisbon Contractors Inc.,* 521 Pa. 97, 101, 555 A.2d 800, 802 (1989); *Hilbert v. Roth,* 395 Pa. 270, 149 A.2d 648 (1959). Therefore, the court properly sustained the defendants' objections to Count IX.

The court also sustained the preliminary objections of ARC relating to Count V which was brought on behalf of plaintiff A.T.S. Count V alleges that ARC was negligent for failing to conduct a criminal background check of defendant Verney, and for failing to actively supervise Verney. There are two flaws in Count V of plaintiffs' complaint regarding ARC. First, the plaintiffs' claim that ARC had a legal duty to conduct a criminal background check, yet fail to identify any Pennsylvania cases consistent with their claim. Secondly, ARC's failure to conduct a background check was not the proximate cause of plaintiffs' injuries.

As mentioned earlier, the plaintiffs provide no instances in which the courts have imposed a legal duty to conduct criminal background checks on charitable

organizations. Moreover, it is debatable whether the imposition of such a duty would be socially desirable, and the court is therefore inclined to leave the resolution of this issue to the legislature should they desire to address it. Regardless, the courts should not impose liability on such organizations ex poste facto.

Ex poste facto also describes ARC's involvement with both the defendant Verney, plaintiff A.T.S. and the alleged misconduct. The plaintiffs' complaint admits that the alleged sexual misconduct predates plaintiff A.T.S.'s involvement with ARC by nearly five years. This means ARC could in no way have prevented the plaintiffs' injuries, and cannot be the legal cause of defendant's injuries. Therefore, the court properly sustained the objection of defendant ARC to Count V of plaintiffs' complaint.

Next, the plaintiffs appeal from the courts decision to sustain the objection of ARC to Count VI. Count VI holds ARC liable to the plaintiff A.T.S. under the doctrine of respondeat superior. Under the doctrine, an employer may be held liable for the acts of an employee committed during the course of and within the scope of his employment. *Lunn v. Yellow Cab Company*, 401 Pa. 231, 169 A.2d 103 (1961); Restatement (Second) of Agency §219. Conduct is not within the scope of employment, however, if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. Restatement (Second) of Agency §228. Verney's alleged acts of sexual molestation were hardly of the kind authorized by ARC, and served absolutely no purpose to ARC. Verney's alleged misconduct went far beyond the scope of his employment as a first aid instructor for the Red Cross, and therefore ARC's objection to Count VI was properly sustained.

Finally, the plaintiffs aver that ARC should be liable for punitive damages. Plaintiffs claim that ARC knew or should have known that the failure to institute a policy requiring a criminal background check of volunteers created a dangerous situation. The Pennsylvania Supreme Court has adopted the guideline of section 908(2) of the Restatement (Second) Torts regarding the imposition of punitive damages. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984). The court states that the state of mind of the actor is vital, and that the act, or failure to act must be intentional, reckless or malicious. *Feld* at 395-396, 485 A.2d at 748. The 3rd Circuit Court of Appeals stated that Pennsylvania has adopted a very strict interpretation of "reckless indifference to the rights of others." *Burke v. Maassen*, 904 F.2d 178 (3rd Cir. 1990). The court stated that there must be evidence that the actor (ARC) appreciated the risk and acted in conscious disregard or indifference to it. *Burke* at 181. Plaintiffs have failed to adequately plead that the employee screening process was guided by any evil motive or reckless indifference to the safety of others, and the objection to Count VII by ARC was properly sustained.

## CONCLUSION

To summarize, the court has dismissed the preliminary objections of defendant BSOA to Counts IV, VI and VII. On the other hand, BSOA's preliminary objections to Counts VIII and IX were sustained, along with all preliminary objections of defendant ARC. In sustaining the preliminary objections of both defendants to Counts VIII and IX, the court held that plaintiffs failed to establish either the intentional or negligent infliction of emotional distress. Plaintiffs did not actually observe any infliction of injury upon A.T.S. by defendants BSOA

or ARC, and therefore there can be no claim for intentional or negligent infliction of emotional distress. Because no cause of action was established in Count VIII the defendants' objections to Count IX (punitive damages) were also properly sustained. With regard to Counts V, VI and VII, the court upheld the preliminary objections of defendant ARC due to the fact that the alleged negligent conduct by ARC was not the legal cause of plaintiffs' injuries, and therefore no claim for punitive damages against ARC can be sustained.