**Medina v. Milton S. Hershey Medical Center**

*Paul D. Brandes* and *Theresa L. Giannone,* for plaintiffs.

*Jonathan B. Stepanian* and *Erin K. Dragann,* for defendants.

KLEINFELTER, *J.,* February 6, 2008—Plaintiffs commenced the instant medical professional liability action by filing a complaint on August 17, 2007. Defendants filed preliminary objections on November 5, 2007, which are now before the court for disposition.

The complaint alleges that Joseph J. Medina arrived at the Milton S. Hershey Medical Center (HMC) Emergency Department on August 24, 2005, complaining of "right-sided chest pain." (Compl. §13.) He was initially seen by E.R. physician Kimberly Sholfield M.D. who took a history and ordered various tests. On August 25, Dr. Lawrence Kass M.D. assumed the care of Mr. Medina. Dr. Kass diagnosed Mr. Medina with musculoskeletal chest pain, prescribed Vicodin and discharged Mr. Medina to home.

On August 25, 2005, Mr. Medina returned to HMC via ambulance "due to fever, fatigue, cough with brown sputum and a syncopal episode." (Compl. §34.) In the E.R., Mr. Medina was "noted to be hypoxic, hypotensive and required intubation and mechanical ventilation." (Compl. §35.)

Mr. Medina remained at HMC until December 15, 2005. While a patient, he was diagnosed with, among other things: "pneumococcal sepsis, pleural effusion, acute respiratory distress syndrome, hypotension, hy-

poxia, vascular compromise, intracranial ischemia, seizures and was status epilepticus for a time, blindness in his right eye, depression and anxiety." (Compl. §37.)

Mr. Medina underwent, among other things: "intubation and mechanical ventilation; exploratory laparatomy; chest tube placement; tracheostomy which was later removed; amputation of his left hand, right fingers, and bilateral below the knee amputation; PEG tube placement; cardioversion; frequent suctioning; and frequent chest x-rays and other procedures." (Compl. §38.) The complaint charges that as a direct and proximate result of defendants' negligence, Mr. Medina suffered, "injuries to and about his body, extremities, lungs, internal organs, nerves, and nervous system, including multi-organ failure, vascular compromise, cardiac compromise, respiratory compromise, pleural effusions, infection, sepsis, seizures, vision loss, neurologic and cognitive injuries, necrosis, gangrene and amputations." (Compl. §39.)

Count I asserts a negligence claim against Dr. Kass. Count II asserts a corporate negligence claim against HMC. Count III is captioned "vicarious liability" and seeks to hold HMC liable "for the acts and omission of their personnel as described herein, inclusive of the health care providers listed in defendants' medical records." Count V[1] is a loss of consortium claim against all defendants asserted by Marquette Hunt (Mr. Medina's wife). Count VI is a claim for negligent infliction of emotional distress asserted by Marquette Hunt against all defendants. Count VII is a loss of consortium claim asserted

---

1. There is no Count IV.

by Mr. Medina against all defendants. The complaint seeks compensation for lost wages, future medical expense, pain and suffering and loss of life's pleasures.

## LEGAL DISCUSSION

Defendants' preliminary objections fall into two categories. The first of these is asserted under Pa.R.C.P. 1028(a)(3), insufficient specificity in a pleading. The second category of objection raises the legal insufficiency of a pleading (demurrer) under Pa.R.C.P. 1028(a)(4).

### *Factual Sufficiency Objections*

Defendants remind us that Pennsylvania is a fact-pleading jurisdiction and that Pa.R.C.P. 1019(a) requires that "the material facts on which a cause of action or defense is based shall be stated in a concise and summary form." The pleadings are thus required to aver facts essential to support each claim so that an opposing party might be given an opportunity to answer and to defend.

At the core of defendants' objection to factual specificity is the holding in *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600 (1983). In *Connor,* plaintiff sued for complications arising from a perforated colon during a barium enema. The original complaint alleged negligence in causing the perforation. At trial, however, Connor sought to amend her complaint by adding a claim of negligence for failure to promptly diagnose and treat the tear.[2] The trial judge disallowed

---

2. Once the perforation had occurred, barium began to leak into the abdominal cavity causing extensive peritonitis, formation of adhesions and a pericolic abscess.

the amendment since it added a new theory of negligence and since the statute of limitations had expired. Superior Court affirmed.

In reversing, our Supreme Court looked to an allegation in the original complaint stating that defendant was negligent "in otherwise failing to use due care and caution under the circumstances." *Id.,* 501 Pa. at 308, 461 A.2d at 602. This language, said the court, "merely amplifies" the original cause of action and, in a footnote added: "If appellee did not know how it 'otherwise fail[ed] to use due care and caution under the circumstances,' it could have filed a preliminary objection in the nature of a request for a more specific pleading or it could have moved to strike that portion of appellants' complaint." *Id.* at 311 n.3, 461 A.2d at 603 n.3.

Since *Connor,* defendants have been understandably wary of any language in a complaint which might later sandbag them during the pleadings, during discovery, in obtaining expert opinions, or during the trial itself. This court has consistently granted preliminary objections to general averments of negligence. See *e.g., Starr v. Myers,* 109 Dauphin Rep. 147 (1988); *Mau v. Roth,* 114 Dauphin Rep. 297 (1994); *Finney v. Milton S. Hershey Medical Center,* 116 Dauphin Rep. 20 (1995); *Marder v. Professional Aerials Inc.,* 123 Dauphin Rep. 50 (2006).

On the other hand, as the late Judge Dowling of this court explained many years ago, a plaintiff "should not be required to plead evidentiary matters;" "preliminary objections should not be used to secure details of which the objector has as much knowledge or more than his opponent;" and "the entire pleading must be scrutinized

as a whole." *Mikula v. Harrisburg Polyclinic Hospital,* 94 Dauphin Rep. 328, 330 (1972).

The latter principles have been followed in more recent appellate opinions. For example, in *Yacoub v. Lehigh Valley Medical Associates P.C.,* 805 A.2d 579, 589 (Pa. Super. 2002) we read:

"[I]n determining whether a particular paragraph in a complaint has been stated with the necessary specificity, such paragraph must be read in context with all other allegations in that complaint. Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which he must defend." See also, *Paz v. Commonwealth, Department of Corrections,* 135 Pa. Commw. 162, 171, 580 A.2d 452, 456 (1990) ("A more specific pleading should not be required as to matters about which the objecting party has, or should have, as much or better knowledge than the pleader.").

With these principles of pleading in mind, we turn to the specificity objections before us.

### Count I (Negligence Against Dr. Kass)

In paragraph 45 of Count I (negligence against Dr. Kass) we find 39 subparagraphs (a-mm). Although there are 39 separate paragraphs, paragraph 45 may essentially be distilled into three claims of negligence. The first of these is a failure to diagnose Mr. Medina's problem; the second is a failure to properly treat his condition; and the third is a failure to admit (rather than to discharge).

To illustrate, subparagraphs (a), (b), (c), (d) and (e) all allege a failure to order certain tests or a failure to diagnose or otherwise properly interpret the tests performed. Subparagraphs (f), (g), (k), (l), (m), (n), (o), and (p) allege a failure to timely treat Mr. Medina's condition. Other subparagraphs of paragraph 45 state this same claim in a variety of ways. We find that all of the paragraphs alleging a failure to timely diagnose and treat Mr. Medina, when read together, pass the test of sufficient pleading.

On the other hand, there are a number of paragraphs that raise collateral issues, which must be stricken for their nebulosity.

We refer to the following:

"(u) Failing to timely, properly and/or adequately avail him/herself of available and pertinent medical writings, publications, information and diagnostic technology both prior to and during Mr. Medina's admission to the hospital;

"(w) Failing to timely, properly and/or adequately avail himself of information, test results, studies, opinions, assessments, diagnoses and materials regarding Mr. Medina which were available at the hospital, as well as from other doctors, therapists and hospitals;

"(y) Failing to timely, properly and/or adequately maintain a continuity in care among the various participating and/or available healthcare providers;

"(gg) Failing to timely, properly and/or adequately supervise the care, practice or work of residents, students, assistants, and/or nurses;

"(hh) Failing to timely, properly and/or adequately make entries in the medical chart and/or comply with applicable rules, protocols, regulations, policies, procedures and/or by-laws with respect thereto;

"(ii) Failing to timely, properly and/or adequately promulgate, enforce, communicate and/or adhere to pertinent and applicable medical, hospital, accreditation, state and/or federal standards, rules, regulations, policies, procedures and/or protocols, the titles of which are not presently known to plaintiffs but which are believe to pertain to: continuity in care; recognizing, assessing, responding to, diagnosing, reporting and/or treating infection, sepsis, pleural effusion, upper respiratory infection and/or pneumonia; monitoring, recognizing, keeping appraised of, diagnosing, treating and/or reporting patient's condition and the patterns and significance thereof; ordering performing, repeating, reading, interpreting, reacting to and/or reporting on vital signs, radiolic studies and/or CBC analysis; ordering performing, interpreting, responding to and reporting on tests, observations, studies, films and examinations to aid in the diagnosis and treatment of patients such as plaintiff; recognizing, assessing, responding to, diagnosing, reporting and/or treating a patient's need for medication; ordering requesting, insuring and/or recommending administration of antibiotics to patients and in appropriate amounts; entering, reviewing, revising and/or carrying out orders for patients such as Mr. Medina; availability of information, test results, studies, opinions, assessments, diagnosis and materials regarding patients such as Mr. Medina which are available at the hospital, as well

as from other doctors, healthcare workers and hospitals; responding to notification by other physicians, nurses and/or healthcare workers regarding a patient's condition and/or distress and/or the signs and symptoms thereof; supervision of residents, students, assistants and/or practitioners; and timely, proper and adequate medical charting;

"(jj) Failing to timely, properly and/or adequately maintain and insure sufficient numbers of healthcare personnel to appropriately and timely monitor, tend to, assess and treat Mr. Medina;

"(kk) Failing to timely, properly and/or adequately educate and advise other health care personnel regarding the care, treatment and assessments of patients such as Mr. Medina;

"(ll) Violating JCAHO and Hospital or corporate standards and pertinent governmental regulations with regard to patient care and medical documentation under the circumstances;

"(mm) Increasing the risk of harm to Mr. Medina as a result of defendant's negligence and/or carelessness as set forth above."

The averments in these paragraphs, which make reference to failures to consult unnamed medical journals or other professional materials, are hopelessly vague. Equally impossible to fathom—let alone answer—are the allegations of failure to train, supervise staff, or to promulgate or enforce unspecified rules or regulations. We will strike the offending paragraphs.

## Count II (Negligence Against HMC)

This count begins by incorporating paragraphs 1-45 of the complaint. It necessarily follows that our rulings with regard to paragraph 45 will equally apply to the objections filed to Count II. As was the case with Count I, Count II contains a single paragraph (47) which is subdivided into 33 subparagraphs. These paragraphs, taken together, allege that HMC has failed to promulgate policies or procedures—none of which are specified; and failed to train and supervise the doctors and medical staff "within its walls." Although these 33 paragraphs are spread over eight pages in the complaint—in a remarkable display of redundancy, it would be a hopeless task for any defendant to divine exactly what policy or training would have made a difference in the care and treatment of Mr. Medina.

Defendants have asked that we strike from paragraph 47 subparagraphs (a) through (d), (i) through (k), (m), (q) through (w), (aa) through (bb), (dd) through (ff), and we will do so.

## Count III (Vicarious Liability Against HMC)

Paragraph 49 of the complaint is a general statement that HMC is vicariously liable "for the acts and omissions of their personnel as described herein inclusive of the health care providers included in defendants' medical records."

HMC objects to the lack of specificity in this paragraph and asserts that "plaintiffs should be required to specifically identify by either name or 'appropriate description'

the precise individuals whose conduct they seek to place at issue."

We find no validity to this objection. In the first place, HMC is in the best position to know the names of its agents or employees who were involved in providing care to Mr. Medina. See *Paz, supra.* Secondly, the class of persons for whom liability is asserted is limited to those who would have had involvement with Mr. Medina within the treatment period addressed under paragraph 45; *i.e.,* the un-stricken subparagraphs of this paragraph.

## DEFENDANTS' DEMURRERS

### Count VI (Negligent Infliction of Emotional Distress Against Dr. Kass; HMC)

Defendants object that the complaint fails to aver facts legally sufficient to support a claim of negligent infliction of emotional distress. To assert such a claim it is necessary to plead:

"(1) Plaintiff was located near the scene of the accident as contrasted with being a distance away from it;

"(2) The distress resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the event, as contrasted with learning of the event from others after its occurrence; and

"(3) Plaintiff and victim were closely related." *Sinn v. Burd,* 486 Pa. 146, 174, 404 A.2d 672, 685 (1979).

Defendants argue that the complaint fails to state a claim because it fails to allege that Marquette Hunt was

present during, and witnessed, the alleged negligent acts of the defendants. Our review of the complaint, however, reveals that this precise allegation is made in paragraph 55 of the complaint.

Admittedly, the instant case varies from *Sinn* and other cases where, factually, there was a single traumatic event as opposed to a course of conduct. The requirement of "contemporaneous observance of the event" may become problematic as the case moves forward;[3] however, for purposes of a demurrer, where we must accept as true all averments in the complaint, the preliminary objections to this count must be overruled.

### Count VII (Loss of Consortium Against All Defendants)

Defendants offer a demurrer to this count since its viability is derivative of Marquette Hunt's claim of negligent infliction of emotional distress.

It follows that defendants' demurrer to Count VII is dependent on a grant of demurrer to Count VI. As we have denied a demurrer to VI, so, too, must we deny a demurrer to Count VII. In doing so we note that the other elements to support a claim for consortium have been sufficiently pled.

---

3. In order to be successful, it is not always necessary that plaintiff observe the negligence of the defendant, "but rather experience(d) a sensory and contemporaneous observance of (the result)." See *Love v. Cramer,* 414 Pa. Super. 231, 235, 606 A.2d 1175, 1177 (1992); but see *Bloom v. Dubois Regional Medical Center,* 409 Pa. Super. 83, 597 A.2d 671 (1991) (recovery denied where alleged negligence was a claim of omission and therefore without direct infliction of injury).

Accordingly, we enter the following

ORDER

And now, February 6, 2008, it is hereby ordered as follows:

(1) Subparagraphs of paragraph 45: (u), (w), (y), (gg), (hh), (ii), (jj), (kk), (ll) and (mm) are stricken for lack of factual specificity;

(2) Subparagraphs of paragraph 47: (a)-(d), (i)-(k), (m), (q)-(w), (aa)-(bb) and (dd)-(ff) are stricken for lack of factual specificity;

(3) Plaintiffs are granted 20 days from the date of this order to file, if they choose to do so, a more specific pleading;

(4) The preliminary objection relating to the factual specificity of the averments in Count III is denied.

(5) The demurrer challenging the legal sufficiency of the pleading in Count VI is denied.

(6) The demurrer challenging the legal sufficiency of the pleading in Count VII is denied.